SCOTT E. BRADFORD, OSB # 062824
United States Attorney
District of Oregon
**SCOTT M. KERIN, OSB # 965128**
Assistant United States Attorney
Scott.Kerin@usdoj.gov
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:24-cr-00413-02-IM** |
| **v.** | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **PABLO MARIN AGUILERA,** | |
| **Defendant.** | |

The government asks the Court to impose a sentence of 37 months' imprisonment, to be followed by a four-year term of supervised release.

The defendant was involved in selling fentanyl, an incredibly addictive, destructive, and deadly poison. Given the nature of the case, defendant's advisory sentencing guidelines, the societal harm caused by fentanyl, the defendant's personal history and characteristics, and the sentence imposed in the co-defendant's case the government believes the requested sentence is both reasonable and justified. The defendant will also very likely be deported to Honduras as a result of his conviction.

**Government's Sentencing Memorandum** **Page 1**

**A.      Summary of Proceedings.**

On April 27, 2026 the defendant waived indictment by the grand jury and plead guilty to Count 1 of the Superseding Information which charged him with Possession with Intent to Distribute Fentanyl, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A).  The maximum sentence the Court may impose is a term of life imprisonment, fine of $10,000,000, and at least five years of supervised release.  There is a potential mandatory minimum sentence of ten years' imprisonment.  There is also a $100 fee assessment.

A Presentence Report (PSR) has been completed.  The government has no objection to the PSR and believes the facts underlying the defendant's count of conviction (PSR ¶¶ 20 - 25) and Sentencing Guideline calculations (PSR ¶¶ 30 - 40) are accurately outlined in both the PSR and plea agreement.

In his plea agreement defendant admitted that:

> [O]n or about October 29, 2024, within the District of Oregon, he possessed with intent to distribute 400 grams or more of a mixture and substance containing fentanyl, a Schedule II controlled substance. Defendant also admits that on October 29, 2024, law enforcement served a search warrant on a residence in which he was staying in Portland, Oregon and from a room associated with the defendant they seized approximately 467 grams of fentanyl, in both powder and pill form.  During an interview the defendant estimated that he had previously sold between 45 to 50 ounces of fentanyl to various customers.  Trained law enforcement investigators would testify that the amount of fentanyl seized indicted that the fentanyl was possessed for purposes of further distribution.

Plea Agreement ¶ 6.

This case arose from a Drug Enforcement Administration (DEA) investigation in California involving wiretaps of the co-defendant's younger brother who was distributing fentanyl in the San Francisco, California area.  PSR ¶ 20.  Through that investigation the co-

**Government's Sentencing Memorandum**                                   **Page 2**

defendant was identified as working with his brother distributing fentanyl here in Portland, Oregon and residing at a residence on NE Webster Street, in Portland, Oregon. *Id.* ¶¶ 21. This defendant was not a target of that California investigation. The California DEA investigation eventually led to a search warrant being executed on the residence on NE Webster Street where the co-defendant, this defendant, and a juvenile were found. *Id.* ¶ 22.

Inside the residence Investigators found significant amounts of fentanyl; items associated with the manufacture, pressing, and distribution of fentanyl; and, approximately $106,994 in cash. *Id.* ¶¶ 23 – 25. Within the rafters of the utility room in the residence, they found approximately 1,924 net grams of fentanyl in three separate packages. *Id.* at ¶ 23. Within one of the bedrooms Investigators found approximately 527 grams of fentanyl inside of a trash bag. *Id.* Inside a second bedroom, which belonged to this defendant, Investigators found another trash bag which containing approximately 301 grams of fentanyl powder and 37 grams of fentanyl pills (counterfeit M30 pills manufactured with fentanyl). *Id.* In a closet in the residence Investigators found a baking dish that contained approximately 151 grams of fentanyl. *Id.* Investigators also found approximately $106,994 in U.S. currency inside the residence, 14 containers of Super Mannitol (a known cutting agent used to mix with fentanyl prior to sale), wire remitter receipts, implements to manufacture and press the powdered fentanyl for sale, and seven cell phones. Id. at ¶ 24.

When the defendant was interviewed he admitted selling between 45 to 50 ounces of fentanyl since he had arrived in Portland, which he said was about three months prior to his arrest. *Id.* Defendant also admitted that some of the money was his but that not all of the fentanyl belonged to him. *Id.* Although the defendants were originally charged together in a

**Government's Sentencing Memorandum**                                    **Page 3**

conspiracy count, it subsequently appeared that their drug distribution activities were separate from one another and thus the government and U.S. Probation Office have calculated their guidelines based upon the amount of fentanyl that was individually attributed to each defendant. PSR at ¶ 25.

**B.      Sentencing Guideline Calculations.**

The Court, "in determining the particular sentence to be imposed," is required to consider the "sentencing range established" by the U.S. Sentencing Guidelines.  18 U.S.C. § 3553(a)(4). "The Guidelines are 'the starting point and the initial benchmark,'. . . and are to be kept in mind throughout the process."  *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (quoting *Kimbrough v. United States*, 552 U.S. 85, 108 (2007)).  "All sentencing proceedings are to begin by determining the applicable Guideline range."  *Id*.

**Initial Base Offense Level (30)**

Because this defendant and the co-defendant Melvin Isaid Miralda-Cruz appeared to be operating independently in their drug distribution activities, the parties have sought to parse out which defendant was responsible for the different amounts of fentanyl seized from the NE Webster residence.  Here, the parties agree that defendant's relevant conduct, pursuant to U.S.S.G. §§ 1B1.3 and 2D1.1(a), involves between 400 grams and 1.2 kilograms of a mixture and substance containing fentanyl, which is less than the co-defendant, and results in an initial Base Offense Level of 30.[1]  PSR ¶ 30, Plea Agreement ¶ 8.

---

[1]      The co-defendant's Base Offense Level was 32 and involved between 1.2 and 4 kilograms of fentanyl.  *See* Government Sentencing Memorandum at 4.  ECF 87 (*United States v. Miralda-Cruz*, Case No. 3:24-cr-00413-01-IM).

**Government's Sentencing Memorandum**                                    **Page 4**

**Maintaining Premises (two-level upward adjustment)**

Pursuant to U.S.S.G. §2D1.1(b)(12), the U.S. Probation Office has recommended a two-level upward adjustment because the defendant maintained premises for the purpose of manufacturing or distributing a controlled substance.  PSR ¶ 31.  Defendant objects to this enhancement.  Although not noted in the Plea Agreement, the government concurs with the U.S. Probation Office and believes the adjustment applies.[2]  As the PSR notes:

> Pursuant to USSG §2D1.1(b)(12), if the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance, increase by 2 levels.  The defendant lived at 425 Northeast Weber Street in Portland.  During an execution of a search warrant at the residence, evidence indicative of drug distribution was located throughout the residence, including distributable pre-packaged quantities of fentanyl, a significant amount of U.S. currency, a cutting agent, and implements to manufacture and press the powdered fentanyl.  During an interview, the defendant indicated that some of the currency in the residence belonged to him and that it had originated from fentanyl sales.  Therefore, this 2-level increase applies.

PSR¶ 31.

As the Ninth Circuit Court of Appeals has recently stated, the maintaining premises enhancement applies where a defendant uses a residence "as the central hub for his drug-trafficking business." *United States v. Tekola*, 169 F.4th 947, 953 (9th Cir. 2026).  In *Tekola*, within his apartment the defendant "stored his drugs and other tools of the drug-dealing trade,

---

[2]     As the Plea Agreement notes, the "guideline calculations above are set forth as estimates only and the parties understand that the final guideline calculations and Criminal History Category will be determined by the Court following the receipt of a Presentence Report and these initial estimates are not binding upon the parties."  Plea Agreement ¶ 13.

**Government's Sentencing Memorandum**                                    **Page 5**

[was] where he processed and recorded the drugs he sold, and [was] a default location where trusted customers picked up drugs." *Id*. at 952. Whether a defendant also uses the premises as a primary residence is irrelevant, so long as they "regularly used the premises both as a primary residence and for substantial drug trafficking activities." *Id*. at 951. Here, the defendant did so.

The defendant had a bedroom at the residence and appeared to be living there; he stored the fentanyl he was selling at the residence; he possessed cash, believed to be from the sale of fentanyl, at the residence; there were the implements to manufacture fentanyl at the residence; and, there was a significant amount of fentanyl cutting agents (containers of Mannitol) at the residence. Furthermore, during his interview the defendant admitted that he had sold between 45 to 50 ounces of fentanyl in the three months he had lived in Portland. Whether he had only been living there three months and other people also lived at the NE Webster residence is irrelevant because at the time the search warrant was executed the residence clearly functioned "as the central hub for his drug-trafficking business." The premises enhancement should apply.

**Minor Role**

Defendant does not qualify for a Minor Role reduction. Defendant asserts that because the co-defendant received a minor role reduction he should as well. Unfortunately for him, his co-defendant received a Minor Role reduction because of his involvement in the California DEA wiretap investigation, an investigation in which the co-defendant was repeatedly being directed where to sell fentanyl. It does not appear that this defendant was ever implicated in that California investigation. Furthermore, the defendant is only being held responsible for what he possessed for purposes of further distribution, not fentanyl he was being directed to sell for others.

**Government's Sentencing Memorandum**                                      **Page 6**

As the Court is aware, the government did not initially view the co-defendant as a "minor" participant in this criminal activity based upon the limited scope of conduct he was being held responsible for in the plea agreement. The U.S. Probation Office likewise did not recommend such a reduction. However, given the government's filings in the related Northern District of California case which involved the co-defendant's younger brother Eldin Jahir Miralda-Cruz, we later concurred with the co-defendant's request for a minor role reduction and believed such a result was fair in that case.

Under the Sentencing Guidelines the Court may reduce a defendant's offense level by two levels if he "was a minor participant in any criminal activity." U.S.S.G. § 3B1.2(b). "The defendant bears the burden of proving that he is entitled to a downward adjustment based on his role in the offense." *United States v. Cantrell*, 433 F.3d 1269, 1282 (9th Cir. 2006) (citation omitted). To carry this burden, the defendant must prove by a preponderance of the evidence that he was "substantially less culpable than the average participant in the criminal activity." U.S.S.G. § 3B1.2, comment. (n.3 (A)); *see United States v. Davis*, 36 F.3d 1424, 1436 (9th Cir. 1994). The relevant pool for comparison of her role in the criminal activity is "all actors who participated" in the "specific criminal scheme" if the court finds "sufficient evidence of their existence and participation." *United States v. Rojas-Millan*, 234 F.3d 464, 473-74 & n.5 (9th Cir. 2000). Identifying hypothetical participants, or participants in the abstract, is not enough. *See e.g., United States v. Rosas*, 615 F.3d 1058, 1068 (9th Cir. 2010) ("Every drug trafficking defendant could point to an unknown network preceding them in the drug trade. Such an argument would normally be ineffective when considering whether the defendant is entitled to a mitigating role reduction."). A minor role adjustment is "generally warranted if the defendant's

**Government's Sentencing Memorandum**                                                    **Page 7**

primary function in the offense was performing another low-level trafficking function, such as distributing controlled substances in user-level quantities for little or no monetary compensation or with a primary motivation other than profit (e.g. the defendant was otherwise unlikely to commit such an offense and was motivated by an intimate or familial relationship, or by threats or fear to commit the offense)." U.S.S.G. § 2D1.1(e)(2)(B)(ii) (emphasis added).

At its core, the overarching question is whether the defendant was "substantially less culpable than the average participant in the criminal activity" for which he is being sentenced based upon the "facts of the particular case." U.S.S.G. § 3B1.2, comment. (n.3 (A) and (B)). In guiding the determination the Commission added a "non-exhaustive" list of five factors for courts to consider when evaluating a defendant's role under this baseline standard. U.S.S.G. § 3B1.2, comment. (n.3(C)). These factors are:

(i)     the degree to which the defendant understood the scope and structure of the criminal activity;

(ii)    the degree to which the defendant participated in planning or organizing the criminal activity;

(iii)   the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv)    the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; [and]

(v)     the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. § 3B1.2 comment. (n.3(C)(i – v)).

**Government's Sentencing Memorandum**                                              **Page 8**

The commentary does not limit the significant discretion afforded to sentencing courts. A district court may apply a role reduction "even if some of the factors weigh against doing so," refuse to apply the reduction "even if some of the factors weigh in favor" of doing so, and "consider other reasons for granting or denying a . . . role reduction." *United States v. Quintero-Leyva*, 823 F.3d 519, 523 (9th Cir. 2016).

Here, as the U.S. Attorney's Office for the Northern District of California noted in their Sentencing Memorandum that Eldin Jahir Miralda-Cruz, the younger brother of the co-defendant, "directed co-conspirators, who were older than him, including one who went by the name "Tito," to sell fentanyl in Oregon;"[3] "directed Tito and others in Portland to possess, prepare, and distribute fentanyl to purchasers in Portland and elsewhere on Mr. Miralda-Cruz's behalf;" "directed Tito to prepare the substances containing fentanyl for distribution, including by mixing the fentanyl with cutting agents in certain proportions to increase the volume of the substance containing fentanyl for distribution to others;" and "direct[ed] Tito to distribute the fentanyl to those same purchasers in Portland . . . [and] [t]hose directions included detailing the amounts of fentanyl to be distributed to the purchasers, the price they should pay for the fentanyl, and when and where the distribution were to take place." *See* United States' Sentencing Memorandum, *U.S. v. Eldin Jahir Miralda-Cruz*, Case No. 4:24-cr-00593-JST (N.D. Calif. Doc. 30), at 2 - 4 (August 8, 2025) at 2, 3, and 4.[4] Given the government's prior filing in the Northern

---

[3]     "Tito" was the co-defendant Melvin Isaid Miralda-Cruz.

[4]     The government in the related Northern District of California case sought a sentence of 48 months' imprisonment for the defendant's younger brother Eldin Miralda-Cruz who, although just turning 18 during the course of the investigation, was described as the one directing the co-conspirators who were selling fentanyl in both the San Francisco, California and Portland, Oregon areas. Eldin Miralda-Cruz Sentencing Memo at 2.

**Government's Sentencing Memorandum**                                    **Page 9**

District of California case we then concurred with the co-defendant Melvin Isaid Miralda-Cruz's request for a two-level minor role reduction.

Here, there is no other government filing we are aware of saying that this defendant was being directed to sell fentanyl or that he was a minor player in an identified larger conspiracy. The defendant sought to be handled separately from his co-defendant and their relevant conduct was attributed accordingly. The defendant is being held responsible for what he possessed with intent to distribute and he should not be granted a role reduction. The U.S. Probation likewise has not recommended a role reduction.

### Safety Valve (two-level reduction)

Because the defendant satisfies the "safety valve" criteria in 18 U.S.C. § 3553(f) and U.S.S.G. § 2D1.1(b)(18), the parties are asking the Court to grant him a two-level downward departure in his Sentencing Guidelines. PSR ¶ 32, Plea Agreement ¶ 9.

### Zero Point Offender (two-level reduction)

Because the defendant also qualifies as a "Zero Point Offender," pursuant to U.S.S.G. § 4C1.1, the parties will recommend a two-level downward adjustment in his Sentencing Guidelines range. PSR ¶ 37, Plea Agreement ¶ 10.

### Acceptance of Responsibility (three-level reduction)

Based upon defendant's guilty plea and acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, the parties ask that the Court grant the defendant a three-level reduction in his offense level. PSR ¶¶ 38 - 39, Plea Agreement ¶ 11.

///

///

**Government's Sentencing Memorandum**                                                    **Page 10**

**3553(a) Variance (two-level reduction)**

Pursuant to 18 U.S.C. § 3553(a), based upon the nature of the offense, the history and characteristics of the defendant, defendant's indication at an early stage in the proceedings about his desire to resolve his case, defendant's willingness to forgo any wiretap related litigation, how similarly situated defendants have been handled by the USAO and the courts, and to achieve a fair and just resolution of the case, the government will recommend that the Court to grant the defendant a two-level downward variance in his overall offense level.  Plea Agreement ¶ 12.

The U.S. Probation Office has concurred in the overall recommendation for a two-level downward variance.  PSR Sentencing Recommendation at *1.

**Government's Recommended Guideline Range**

The government's Sentencing Guideline calculations, coupled with a two-level 3553(a) downward variance, results in an Adjusted Offense Level of 23 and with a Criminal History Category of I, an advisory sentencing guideline range of 46 to 57 months' imprisonment.

Defendant has been in federal custody since the federal arrest on October 29, 2024.

**C.     Government's Recommended Sentence.**

Pursuant to 18 U.S.C. § 3553(a) and taking into consideration the sentence imposed in the co-defendants case, we ask the Court to impose a sentence of 37 months' imprisonment, to be followed by a four-year term of supervised release.  This sentence is sought to account for this defendant's involvement in the distribution of fentanyl, the amount of fentanyl he possessed, the admissions he made, and the 37-month sentence of imprisonment imposed in the co-defendant's case, who started at a two-level higher offense level, but also received a corresponding Minor Role reduction, a reduction we do not believe this defendant is entitled.  Given the Sentencing

**Government's Sentencing Memorandum**                                      **Page 11**

Guideline calculations, the harm caused by fentanyl, and the sentence imposed in the co-defendant's case, we believe such a sentence is reasonable.

The defendant was selling fentanyl, an extremely addictive, destructive, and deadly poison that has been devastating the community.  According to law enforcement:

> Fentanyl and methamphetamine remain the primary drug threats, affecting community livability and contributing to drug-related overdose deaths and criminal activity, including crimes against persons and property in the HIDTA region.  In 2023, fentanyl was linked to 75.9% of overdose deaths in Oregon and 51% in Idaho.  Methamphetamine was present in 63.5% of Oregon's overdose deaths and 38% of Idaho's.  Together, these two substances accounted for 41.3% of overdose fatalities in both states.

OREGON-IDAHO HIGH INTENSITY DRUG TRAFFICKING AREA (HIDTA) 2026 THREAT ASSESSMENT, 2025, at 5 (https://oridhidta.org/reports).

Aside from his involvement in this case we have no other information he was involved in the distribution of drugs and we have no doubt that when he came to the United States in 2018 he did so to escape the poverty he experienced in Honduras.  However, the experience does not provide any justification or excuse for the harm he in turn inflicted upon others.  By his own admission he sold between 45 to 50 ounces of fentanyl in the three months he was in Portland.  Fentanyl kills.  Even in very small amounts, fentanyl is a deadly poison and this defendant distributed that poison without any regard for the harm he was causing others.

Accordingly, after evaluating the competing sentencing factors outlined in 18 U.S.C. § 3553(a) which include the nature and circumstances of the offense; the defendant's characteristics; the need for the sentence imposed to reflect the seriousness of the offense; the need for the sentence to promote respect for the law; the need for the sentence to afford adequate deterrence to criminal conduct; the need for the sentence to provide just punishment for the

**Government's Sentencing Memorandum**                                                    **Page 12**

offense; the need to protect the public from further crimes of the defendant; and, the need to provide the defendant with needed training or other corrective treatment, we believe a sentence of 37 months' imprisonment is reasonable.  We ask the Court to impose it, to be followed by a four-year term of supervised release.

At the time of sentencing the USAO will ask the Court to dismiss the original indictment.

There is an appeal waiver.

Following his time in custody the defendant will likely be deported to Honduras.

Dated: July 24, 2026.                                      Respectfully submitted,

                                                          SCOTT E. BRADFORD
                                                          United States Attorney

                                                          /s/ *Scott Kerin*

                                                          SCOTT M. KERIN, OSB # 965128
                                                          Assistant United States Attorney

**Government's Sentencing Memorandum**                                      **Page 13**